Matthias, J.
 

 These several actions originated in the court of common pleas of Hamilton county and were heard in the Court of Appeals on appeal. Each of the insurance companies, party plaintiff in the several cases, in making its tax return for the year 1923, as in the years prior thereto, deducted the amount of its legal reserve from its gross taxable credits, and the specific question presented by the issues made in the several actions is whether an Ohio legal reserve life insurance company may deduct the amount of its legal reserve from its gross taxable credits in making return of its property for taxation under the law. The Court of Appeals answered the question in the affirmative. Counsel representing the plaintiff in error and the several defendants in error having, during argument, specifically waived the question of procedure, we have not considered such question.
 

 The deduction of the legal reserve from the gross taxable credits was made by each of said companies in the preparation of its tax return upon the theory that the same is authorized by the provisions of Sections 5327 and 9357, General Code, the essential portions of which provide as follows:
 

 Section 5327: “The term ‘credits,’ as so used, means the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become
 
 *418
 
 due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of the state, other than such as are held to be money, as hereinbefore defined, when added together estimating every such claim or demand at its true value in money, over and above the sum of legal
 
 bona fide
 
 debts owing by such person.”
 

 Section 9357: “A company [legal reserve life] organized under the laws of this state may invest its accumulations as follows: * * * 4. In loans upon its own policies, not exceeding the reserve or present value thereof, computed according to the American experience table of mortality with interest at four per cent, or according to other higher standard or standards as the company has adopted, the reserve being the amount of debts of life insurance companies by reason of their outstanding policies in gross, and which may be so treated in the returns for taxation made by them. Such companies may sell, change, or reinvest such investments, or any part thereof, at pleasure.”
 

 It is urged by counsel for the auditor that the amount which the insurance company seeks to deduct as a “legal
 
 bona fide
 
 debt” from its credits in making its return for taxation is only a contingent liability of the company to its policy holders, and therefore that the deduction thereof as a “legal
 
 bona fide
 
 debt” is not authorized by the provisions of Section 5327, General Code, nor as a “debt” by the provisions of Section 9357, General Code.
 

 It may be stated at the outset that it is difficult to make a distinction between the terms above quoted; that is, “legal
 
 bona fide
 
 debt” and “debt,”
 
 *419
 
 for if the fund in question is, in fact and in law, a “debt,” then it is a “legal
 
 bona fide
 
 debt.” Let us first ascertain what this legal reserve is, and its source. It is a fund created as a result of the method of fixing and determining the policy premiums, and is the accumulation of premiums resulting from the collection of a higher rate than is necessary to meet actual losses occurring'in the earlier policy years, when costs are relatively low, in order to continue a level or equal premium and still create and maintain a fund sufficient to meet losses, which are sure to occur in later years of higher mortality. As well suggested by one author, Alexander, it is obvious that under the level premium plan all payments during the earlier years must be held for the purpose of making up the deficiencies of later years. The premiums which thus come to the company must be placed in a fund to the credit of the policy holders until needed, as of course it will be at a later time. The fund thus created is a trust fund and must be held and treated as such, and not otherwise used. This is a statutory requirement in this state as it is in practically all of the states. These statutes relating to the reserve or reserve fund and requiring the creation and maintenance thereof by life insurance companies are not of recent origin, the first statutory provision relating to reserves of such companies having been enacted in 1872, which, with some amendment, but with no substantial change of purpose or principle, now constitutes Section 9362, G-eneral Code. It is thereby required that there shall be set aside “an amount equal to the reserve on all its outstanding
 
 *420
 
 risks and policies, calculated by what is known as the American experience table, with interest at four per cent, per annum, or by such other higher standard or standards as the company may have adopted, and the unearned premium on all personal accident and sickness insurance.” And it is further provided therein that no dividends or allowances can be paid to stockholders except from surplus funds, after setting aside such amount. Both in Section 628 and Section 636 of the General Code, relating to the supervision and control of life insurance companies, this reserve, which is required to be maintained, is consistently regarded and treated as a liability of the company, and the amount of such liability is to be determined by a valuation of all policies in the manner therein provided.
 

 Although the provision specifically authorizing the reserve to be treated as a debt in the returns for taxation purposes was not inserted in Section 9357, General Code, until 1908, the designation of the reserve as a debt of the company was enacted in 1878 and has continued unchanged from that time. The provision is in the following language :
 

 “The reserve being the amount of debts of life insurance companies by reason of their outstanding policies in gross.”
 

 It is significant, too, that in the statutes prescribing the requirement of policies as to form and conditions the reserve is uniformly regarded as a liability of the company to the policy holders, and in the reports to be made by such companies to the state insurance department the reserve must be carried as a liability of the company and placed
 
 *421
 
 as a debt in the statement of its assets' and liabilities.
 

 It is therefore quite clear that for many years Ohio life insurance companies have been required by statute to maintain a reserve and further required to treat such reserve fund as a debt of the company, and the declaration has not been controverted, that, acting under authority of the earlier provisions defining the reserve as a debt, the same had been deducted from gross credits in making return for taxation long prior to the amendment in 1908 (99 Ohio Laws, p. 180). The provisions of our statutes are in full accord with the outstanding authority upon the subject. In other states, some of which have a statutory exemption of reserve as a debt of the company, and others having no such specific exemption, it has been generally held that the amount of the reserve is properly treated as a liability or debt of the company.
 

 In the case of
 
 Blanchard
 
 v.
 
 Prudential Ins. Co.,
 
 80 N. J. Eq., 209, 83 A., 220, the court, in a discussion of the reserve fund and its purpose, said:
 

 “This fund is a sacred one for the benefit of its policy holders, and is not subject to be diverted from the purpose for which it was established, without a breach of trust on the part of the company.”
 

 In 13 A. L. R., (Annotated), at page 186, many cases are cited and discussed, as a conclusion whereof the writer states:
 

 “One is constrained to think that the weight of authority and better reason are on the side of the decisions which have held that life insurance companies, when assessed for taxation upon their
 
 *422
 
 assets under statutes allowing the deduction of debts, are entitled to have deducted as an indebtedness to policy holders their reserve fund, set apart and maintained to meet the obligations assumed and imposed for the security of the policies.”
 

 Some of the cases which may be cited supporting this doctrine, and in full accord with the general statement just quoted, are
 
 Alabama Gold Life Ins. Co.
 
 v.
 
 Lott, Tax Collector,
 
 54 Ala., 499,
 
 Equitable Life Ins. Co.
 
 v.
 
 Board of Equalization of City of Des Moines,
 
 74 Iowa, 178, 37 N. W., 141,
 
 Michigan Mutual Life Ins. Co.
 
 v.
 
 Common Council of Detroit,
 
 133 Mich., 408, 95 N. W., 1131, and
 
 City of Yale
 
 v.
 
 Michigan Farmers’ Mutual Fire Ins. Co.,
 
 179 Mich., 254, 146 N. W., 88. The last case is cited because of the distinction it makes between the reserve of fire insurance companies and of life insurance companies in the respect under discussion. In referring to the Iowa statute and the effect thereof, the court in the
 
 Equitable Life Ins. Co. case, supra,
 
 said:
 

 “This statute, therefore, recognizes the existence of a debt from the company to the policy holders, and provides for securing its payment through this reserved fund. To us it seems plain that the plaintiff [insurance company] is indebted to each of its policy holders, and the aggregate amount of such indebtedness equals this reserved fund, which should be deducted from plaintiff’s money and credits in listing the same for taxation.”
 

 We are of opinion that such reserve is a liability or debt of the. company and comes within the terms of both Section 5327 and Section 9357 of the General Code, authorizing the deduction thereof from the gross credits of the company in making its tax returns.
 

 
 *423
 
 The constitutionality of Sections 5327 and 9357, General Code, is challenged. This court quite recently upheld the constitutionality of Section 5327 in the case of
 
 Tax Commission of Ohio
 
 v.
 
 National Malleable Castings Co.,
 
 111 Ohio St., 117, 144 N. E., 604, 35 A. L. R., 1448. In the opinion the cases involving the constitutionality of statutory provisions such as are now incorporated in Section 5327, permitting the deduction of debts from gross credits, etc., in returning property for taxation, were fully reviewed and the conclusion announced that the case of
 
 Exchange Bank of Columbus
 
 v.
 
 Hines, Treas., 3
 
 Ohio St., 1, had been effectively, though not expressly, overruled by the subsequent decisions of this court there cited and discussed. The reasons for the application of the doctrine of
 
 stare decisis,
 
 so clearly stated in that opinion, are even more cogent now, and since five members of this bench as now constituted concurred in the judgment rendered in that case it seems unnecessary at this time to enter upon the further discussion of the constitutionality of that statute.
 

 The application of the same principle declared in the
 
 National Malleable Castings Co. case, supra,
 
 and the cases there cited and followed, require a holding that Section 9357, General Code, is also valid and not violative of any constitutional provision.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Day, Allen, Kinkade, Robinson and Jones, JJ., concur.